STEPHANIE S. CHRISTENSEN
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JEFF MITCHELL (Cal. Bar No. 236225)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0698
     Facsimile: (213) 894-0141
     E-mail:   jeff.mitchell@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 21-00579-DMG |
|---|---|
| Plaintiff, | JOINT SENTENCING RECOMMENDATION FOR DEFENDANT MATTHEW FUNKE |
| v. | |
| MATTHEW FUNKE, | Sentencing Date:  9/14/2022<br>Sentencing Time:  4:00 p.m. |
| Defendant. | Location:  Courtroom of the Hon. Dolly M. Gee |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorney Jeff Mitchell, and defendant MATTHEW FUNKE, by and through his counsel of record Nathan Hochman, hereby file this joint sentencing recommendation.

//

//

//

This joint sentencing recommendation is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: September 3, 2022

Respectfully submitted,

STEPHANIE S. CHRISTENSEN
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney

JEFF MITCHELL
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

Dated: September 5, 2022

    /s/   Per E-Mail Authorization
NATHAN HOCHMAN
Attorney for Defendant
MATTHEW FUNKE

**JOINT MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

On April 6, 2022, defendant MATTHEW FUNKE ("defendant") pled guilty pursuant to a plea agreement to a two-count information charging defendant with the Operation an Unlawful Gambling Business, in violation of 18 U.S.C. § 1955, and Acceptance of a Financial Instrument for Unlawful Internet Gambling, in violation of 31 U.S.C. §§ 5363, 5366. (PSR ¶¶ 1-3.)

Based on the terms of the plea agreement, and as detailed further herein, the parties jointly recommend that defendant be sentenced to a two-year term of probation with home confinement for the first six months, a fine of $4,000, and a mandatory special assessment of $200.  In addition, the parties jointly recommend that the Court impose a permanent injunction enjoining defendant from placing, receiving, or otherwise making bets or wagers or sending, receiving, or inviting information assisting in the placing of bets or wagers, pursuant to Title 31, United States Code, Section 5366.

**II.   STATEMENT OF FACTS**

At the time of entry of his guilty plea, defendant admitted to the following facts pursuant to the plea agreement:

> Beginning on a date unknown and continuing to on or about February 7, 2020, in Los Angeles County, California, defendant conducted an unlicensed and illegal bookmaking business that took bets for money on sporting events from various persons.

> The business, which defendant operated in violation of California Penal Code Section 337(a) (prohibiting bookmaking within the state of California), involved more than five persons who conducted, financed, managed, supervised, directed, or owned all or part of the business, including W.N., E.K., C.S., T.H., B.S. The business remained in substantially continuous operation by at least five persons for at least six years and often had gross revenue of well over $2,000 on a single day.

> Specifically, defendant, operating out of various locations in Los Angeles County, solicited and accepted customers for the Sand Island Sports bookmaking organization, which was based in Costa Rica. When defendant found a new customer who wanted to place wagers on sporting events, defendant, or one of his associates, contacted Sand Island Sports and arranged for an account to be set up for the customer. After the account was established, defendant advised the customer as to the limits on his or her wagering activity, and referred the customer to the Sand Island Sports website (www.SandIslandSports.com) to allow California residents and others to place wagers on sporting events over the internet, in violation of California Penal Code Section 337a. The customers were participating in unlawful internet gambling, as defined in paragraph 7 of this plea agreement. Defendant and others in the Sand Island Sports organization would keep track of the customers' wagering activity and win/loss record. When a customer won a bet, defendant or an associate paid him or her based on the size of the bet and the odds that had been set by Sand Island Sports. When a customer lost, defendant or an associate collected the amounts due under the terms of the bet.
>
> Defendant received the proceeds from the sports gambling activity in cash, checks, and electronic fund transfers. For example, on October 7, 2019, defendant accepted and received from L.P. an electronic funds transfer issued by Bank of America for $16,000. At the time defendant received the electronic funds transfer, defendant knew the transfer was to pay for gambling losses incurred by L.P. in the United States from bets placed on or through the SandIslandSports.com website, which was hosted in Costa Rica, in violation of California Penal Code Section 337a.
>
> In November 2018 defendant had been operating his gambling business for several years, had more than 100 players, and hoped to end the season with millions of dollars in his account.

(Plea Agreement ¶ 16.)

## III. SENTENCING CALCULATIONS

The PSR adopts the Plea Agreement's calculation of the Sentencing Guidelines. Specifically, Counts One and Two group for an adjusted offense level of 12. After acceptance of responsibility, defendant's total offense level is 10. (PSR ¶¶ 27-36.)

The parties agree that defendant has no criminal history and is properly in Category I. (PSR ¶¶ 40, 41.) Therefore, defendant is in

Zone B and his Guideline range is 6-12 months with a fine range of $4,000 to $40,000.  (PSR ¶¶ 85, 97.)

**IV.  OBJECTIONS TO THE PSR**

The parties object to the sentencing recommendation of the PSR that recommends six months of home confinement, but three years of supervised release.  (PSR Rec. Letter at 1, 5.)

If a defendant falls within Zone B of the Sentencing Table, the minimum term of imprisonment may be satisfied by:

1) a sentence of imprisonment;

2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in USSG §5C1.1(e), provided that at least one month is satisfied by imprisonment; or

3) a sentence of probation that includes a condition or combination of conditions that substitute intermittent confinement, community confinement, or home detention for imprisonment according to the schedule in USSG §5C1.1(e).

USSG §5C1.1(c).

Here, the PSR's recommendation appears to conflate (2) and (3) by recommending home confinement, without at least one month of imprisonment, AND Supervised Release.  The parties submit that if the Court wishes to impose a sentence of home confinement, without at least one month imprisonment, the Court must sentence defendant to probation, and not a term of Supervised Release.

**V.  JOINT SENTENCING RECOMMENDATION**

The parties request that the Court adopt the above factual findings and guidelines calculations.  The parties request that the Court impose the following sentence, which the parties submit is reasonable and appropriate:

- A two-year term of probation; the first six months to be served in home confinement;
- A fine of $4,000 (at the low-end of the fine range given that defendant has agreed to the full forfeiture of the $137,544 seized from him);
- A mandatory special assessment of $200,
- Forfeiture of $137,544 consistent with the Court's Preliminary Order of Forfeiture (Dkt. No. 31); and
- A permanent injunction enjoining defendant from placing, receiving, or otherwise making bets or wagers or sending, receiving, or inviting information assisting in the placing of bets or wagers, pursuant to Title 31, United States Code, Section 5366.

**VI. THE PARTIES' RECOMMENDED SENTENCE IS REASONABLE AND APPROPRIATE UNDER THE SECTION 3553(a) FACTORS**

While not definitive, the Guidelines range provides the starting point for finding a reasonable sentence and must then be considered with the factors set forth in 18 U.S.C. § 3553(a). See United States v. Cantrell, 433 F.3d 1269, 1279 (9th Cir. 2006). "To comply with the requirements of Booker, the district court must have sufficiently considered the Guidelines as well as the other factors listed in § 3553(a). This requirement does not necessitate a specific articulation of each factor separately, but rather a showing that the district court considered the statutorily-designated factors in imposing a sentence." United States v. Nichols, 464 F.3d 1117, 1125 (9th Cir. 2006) (quoting United States v. Knows His Gun, 438 F.3d 913, 918 (9th Cir. 2006)).

4

1    Here, defendant was born in North Dakota and moved to Los
2 Angeles in 2000 to pursue a career in acting.  Ultimately, defendant
3 engaged in illegal bookmaking.  Defendant started in illegal
4 bookmaking several years ago as an agent of the Wayne Nix Gambling
5 Business.  As an agent of the Nix Gambling Business, defendant
6 recruited clients to Nix's business and collected money from the
7 clients, but Nix was responsible for paying the clients if they won
8 bets.  In exchange for recruiting clients and collecting the money,
9 defendant received a commission of the gambling losses incurred by
10 his clients.
11    Over time, defendant's book of business grew to a point in which
12 it was more profitable for defendant to operate his own book.  In
13 2018, defendant operated his own book, had more than 100 clients of
14 his own, and made a significant amount of dollars.
15    In mitigation, defendant accepted responsibility early and
16 agreed to waive his right to a grand jury and indictment.  Thereby,
17 saving the government significant resources.  In addition, defendant
18 also waived his right to a full and complete set of discovery.  These
19 factors are not accounted for in the Guidelines; however, the Court
20 can, and should, consider these facts under 3553(a).  Indeed,
21 consideration of these facts under 3553(a) will encourage defendants
22 in the future to accept responsibility early and save additional
23 government and judicial resources.
24    In addition, defendant agreed to a voluntary interview with law
25 enforcement.  Defendant was truthful during the interview and
26 admitted his role in the larger conspiracy.  Ultimately, the
27 information provided by defendant was not needed for the
28 investigations of others by the government, pursuant to USSG § 5K1.1.

Therefore, the government did not offer defendant a cooperation plea agreement. While defendant does not qualify for a 5K departure, the Court can and should consider these facts about defendant's efforts to truthfully cooperate under § 3553(a). Specifically, defendant's willingness to submit to an interview and answer all questions truthfully demonstrates his respect for the law.

**VII. NEED TO AVOID UNWARRANTED SENTENCE DISPARITIES**

Section 3553(a)(6) provides that in determining the particular sentence, the Court shall consider the need to avoid unwarranted sentence disparities. Following the recommended sentencing guideline range will avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

Here, defendant is the first individual to be sentenced from this investigation; however, the following defendants are related:[1]

1. US v. Wayne Nix and Edon Kagasoff, CR No. 22-80-DMG;
2. US v. Howard Miller, CR No. 22-79-DMG;
3. US v. Celebrity Financial, CR No. 22-81-DMG;
4. US v. Joseph Castelao, CR No. 22-32-DMG; and
5. US v. Ken Arsenian, CR No. 21-571-DMG.

Defendant Funke falls within the mid-range of culpability. He is more culpable than Miller but less culpable than Nix, Kagasoff, Castelao, and Arsenian.

Defendant Nix is the lead defendant in the investigation, and defendant Kagasoff operated the day-to-day functions of Nix's gambling business that oversaw more than 1000 clients.

---

[1] There is one additional matter under seal, and the government's investigation is ongoing.

6

Defendant Castelao is the owner and operator of the Sand Island Sports website that hosted and tracked the gambling.

Defendant Arsenian is most similar to defendant Funke in the nature of the gambling offense.  Both defendants operated their own books under Nix's platform; however, defendant Arsenian's book was slightly larger than defendant Funke's book.  Defendant Arsenian was also charged and pled guilty to tax offenses.

**VIII.   CONCLUSION**

For the foregoing reasons, the parties request that the Court adopt the guidelines calculations from the Plea Agreement, and sentence defendant to:

- A two-year term of probation; the first six months will be served in home confinement;
- A fine of $4,000;
- A mandatory special assessment of $200,
- Forfeiture consistent with the Court's Preliminary Order of Forfeiture (Dkt. No. 31); and
- A permanent injunction enjoining defendant from placing, receiving, or otherwise making bets or wagers or sending, receiving, or inviting information assisting in the placing of bets or wagers, pursuant to Title 31, United States Code, Section 5366.