1    UNITED STATES DISTRICT COURT

2    CENTRAL DISTRICT OF CALIFORNIA

3    WESTERN DIVISION

4    -oOo-

5    HONORABLE DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

6

7

8    UNITED STATES OF AMERICA,

9                    Plaintiff,

10   v.                        Case No. 2:21-cr-00579-DMG

11   MATTHEW FUNKE,

12                    Defendant.

13

14

15    REPORTER'S TRANSCRIPT OF SENTENCING

16    LOS ANGELES, CALIFORNIA

17    SEPTEMBER 14, 2022

18

19   _____

20

21              SUZANNE M. MCKENNON, CRR, RMR
                UNITED STATES COURT REPORTER
22
                UNITED STATES COURTHOUSE
23              350 W 1st STREET, ROOM 3411
                LOS ANGELES, CALIFORNIA 90012
24                   (213) 894-3913
                suzanne@ears2hands.com
25

```
 1   APPEARANCES:

 2

 3   On Behalf of the Government:

 4        JEFF P. MITCHELL, Assistant United States Attorney
               United States Attorney's Office
 5             Major Frauds Section
               312 North Spring Street, 11th Floor
 6             Los Angeles, California 90012

 7

 8

 9   On Behalf of the Defendant:

10        NATHAN J. HOCHMAN, Attorney at Law
               Ross LLP
11             1900 Avenue of the Stars, Suite 2800
               Los Angeles, California 90067

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    (Proceedings commenced on September 14, 2022, at 3:58 p.m.)

2              THE COURTROOM DEPUTY:  Calling Item Number 2,

3    CR 21-579 DMG, United States of America versus Matthew Funke.

4      For the government we have?

5              MR. MITCHELL:  Good afternoon, Your Honor.  Jeff

6    Mitchell on behalf the United States.

7              THE COURTROOM DEPUTY:  On behalf of Defense?

8              MR. HOCHMAN:  Good afternoon, Your Honor.  Nathan

9    Hochman on behalf of Defendant Matthew Funke, who's present in

10   court.

11             THE COURT:  Good afternoon, everyone.

12       This is the time set for sentencing.  Is there any reason

13   why judgment and sentence should not be imposed at this time?

14             MR. HOCHMAN:  No, Your Honor, there is no reason why

15   we should not proceed.

16             THE COURT:  All right.  I've read and considered the

17   presentence investigation report and the Probation Office's

18   disclosed recommendation letter, both filed on July 26.  I'm

19   also read and considered the parties' joint sentencing position

20   filed on September 6.

21       Are there any other documents that the Court should have

22   considered?

23             MR. MITCHELL:  No, Your Honor.

24             MR. HOCHMAN:  No, Your Honor.

25             THE COURT:  All right.  Let's see.

1      Mr. Hochman, have you had sufficient time to review the
2  presentence report with your client?
3            MR. HOCHMAN:  Yes, Your Honor.
4            THE COURT:  And you explained the contents of that
5  report to him?
6            MR. HOCHMAN:  I have, Your Honor.
7            THE COURT:  Do you have any concerns about his
8  ability to understand that?
9            MR. HOCHMAN:  I'm sorry, I have no such concerns,
10  Your Honor.
11            THE COURT:  All right.  Mr. Funke, you've reviewed
12  the presentence report?
13            THE DEFENDANT:  I have, Your Honor.
14            THE COURT:  And you've discussed it with your
15  attorney?
16            THE DEFENDANT:  I have, Your Honor.
17            THE COURT:  And you -- do you need any more time to
18  review it?
19            THE DEFENDANT:  I do not, Your Honor.
20            THE COURT:  Do you want to change or contest anything
21  in the presentence report that wasn't presented in your papers,
22  Mr. Hochman?
23            MR. HOCHMAN:  No, Your Honor.
24            THE COURT:  All right.  Would you like to be heard at
25  this time?

```
1              MR. HOCHMAN:  Yes, Your Honor.
2         Your Honor, Mr. Funke comes before this Court as someone
3    who has never been before a Court for a criminal violation.
4    He's 43 years old, as the Court is aware, from the presentence
5    report and our position.  He grew up in North Dakota, came to
6    California to pursue a career in the entertainment industry,
7    actually, had a fairly successful career in the entertainment
8    industry.
9         And, unfortunately, what brings us to this Court today is
10   that Mr. Funke got involved with a sports betting operation.
11   It started, obviously, slowly at first, and then Mr. Funke got
12   more involved with it.
13        I believe, as the government correctly points out, that,
14   in the context of the whole operation, he was certainly at the
15   very low end of the spectrum of that operation, but
16   nevertheless, Mr. Funke committed criminal violations and
17   that's why he's here before you.
18        I think what is important to note, Your Honor, is what
19   happens when someone gets caught.  You know, what do they do?
20   Do they stay in denial?  Do they fight the obvious?  Do they
21   contest everything?  Or do they do what Mr. Funke did?
22        Mr. Funke, when he first came to me, he said, "Look, I did
23   it.  What do I do about it?"
24        I said, "Well, you're going to have to fully accept
25   responsibility.  You're going to have to plead to federal
```

1    felonies.  It will be on your record for the rest of your life.
2    You're going to -- the government has seized certain money.
3    And rather than contest that, you need to actually not contest
4    the forfeiture of $137,000 and change."
5         And he said, "Fine."  He said, "Contact the prosecutor.
6    Tell him that I want to come in right now."
7         And I believe we were one of the first people in this
8    situation that came before Mr. Mitchell.  And I said to
9    Mr. Funke, I said, "They're going to want one more thing
10   besides just accepting responsibility for your own actions.
11   They're going to want to ask you some questions.  Are you
12   willing to cooperate?"
13        And he says, "Yes."
14        So he set up an interview.  Mr. Funke appeared with
15   Mr. Mitchell and the agents.  He answered each and every one of
16   their questions.  I believe the government indicated that they
17   believed it was truthful, all of his responses.  Didn't turn
18   out that they needed his information or his testimony to make
19   the -- to further the investigations or prosecutions of others,
20   which is why we don't have a 5K motion.
21        But nevertheless, Mr. Funke did what we would hope
22   everyone in his situation would do, which is fully accept
23   responsibility for his actions, instruct his attorney to
24   immediately come in and get into a plea agreement or whatever
25   needs to be done, you know, to make this process go as smoothly

1   as possible, not contest the forfeiture, cooperate with the
2   government, and appear before this Court.
3       I think even having, which is somewhat unusual, a joint
4   sentencing position, Your Honor, you probably don't see that
5   too often.  But again, this is in the spirit of what Mr. Funke
6   has been doing since he came to that recognition a while ago --
7   we're talking years ago -- that he had done something wrong,
8   which is what do I do to make up for it.
9       Again, it is a spirit that I love to see.  I see in every
10  one of my clients come to it a little later in the day, in the
11  realization.  Mr. Funke came to it extremely early in the
12  process.
13      And I think that is why you have this recommendation.  And
14  it's for a two-year term of probation.  The first six months to
15  be served in home confinement, a fine of $4,000.  And I
16  believe, if Mr. Funke didn't have the forfeiture of $137,544,
17  we probably would have agreed to a different number, but in
18  light of that forfeiture, we agreed to the low end of the
19  guideline range of $4,000.  The special assessment, of course,
20  of $200.
21      And then this other feature that only comes up with these
22  gambling cases, Your Honor, is a permanent injunction enjoining
23  him from not only receiving other people's bets but placing or
24  otherwise making any wagering or sending it or inviting
25  information, permanently.  You know, that covers the rest of

1    his life, Your Honor.

2         And he understands that.  That is part of the punishment

3    in this situation is that, not only is he going to -- not only

4    can he not do it during probation, this is actually a permanent

5    injunction that will survive long after the probationary period

6    is done.

7         So I think that the sentence that we've jointly come up

8    with, I hope, balances the competing concerns of just

9    punishment and deterrence with a recognition of the mitigating

10   factors in this case, his lack of criminal history, his

11   acceptance of responsibility, his cooperation, his lack of

12   contesting the forfeiture amount, and I would submit to your

13   Court -- to this Court that this is a sufficient but not

14   necessary -- but not -- a necessary but not -- a sufficient

15   sentence under the 3553(a) factors, Your Honor.  And I'd ask

16   the Court to adopt it.

17        THE COURT:  All right.  Thank you.

18        Would you and Mr. Mitchell please comment on the other

19   conditions that the probation officer recommended, such as the

20   compliance with the computer monitoring program?  There are

21   some other provisions --

22        MR. HOCHMAN:  Sure.

23        THE COURT:  -- in the disclosed recommendation letter

24   that you didn't address.

25        Are those copasetic with you, or are those not things that

1   you think are necessary?

2          MR. HOCHMAN:  I mean, Your Honor, I don't think

3   Mr. Mitchell and I discussed two of these provisions.  The

4   computer monitoring program, I think, is -- I've seen that used

5   much more for people involved in, sort of, theft of individual

6   information cases, hacking cases, those type of cases.

7      I don't think it's necessary in this case.  I saw no

8   evidence that Mr. Funke at any point stole someone's identity

9   or -- other than using the computer to facilitate this

10   particular crime, which obviously, he is long since done with,

11   there is no allegation that he uses a computer in any other

12   nefarious sense.

13      So, obviously, we'll defer to the Court if the Court

14   thinks it's necessary, but I don't think in this type of case

15   that that computer monitoring program condition is necessary.

16      And then with respect to home detention, the only thing we

17   would ask on home detention, Your Honor, is, I think, this is

18   one of the cases where the Court need not order electronic

19   monitoring.  Mr. Funke has shown up every time the government

20   wanted to speak with him.  He showed up on time on the date and

21   time that was requested.  He's done the same thing with the

22   Court.

23      I think that sometimes the electronic monitoring program

24   becomes more work for the Probation Office, because they've got

25   to set it up; they've got to monitor it.  Sometimes if you're,

1   you know, 10 feet away from the exact device at the wrong time,

2   it sets off the bells and whistles.

3       I think Mr. Funke has shown the Court that, if you order

4   the home detention, he will comply with the probation officer's

5   directives on where and when he needs to be, and we don't need

6   additional electronic-monitored home detention.

7       Those would be the only two conditions that we would have

8   comment on, Your Honor.

9           THE COURT:  What about the condition about not

10  entering or frequenting or being involved with any illegal

11  gambling establishment or activity during the period of

12  supervision?

13          MR. HOCHMAN:  We have absolutely no problem with

14  that, Your Honor.

15          THE COURT:  All right.

16      Mr. Mitchell, do you have any thoughts on those

17  conditions?

18          MR. MITCHELL:  Yes, Your Honor.

19      In terms of condition number 6, which is the computer

20  monitoring program which the defendant should pay the cost of,

21  I don't believe there is any need for that in this situation.

22  While computers can be used to kind of access the online

23  websites, in today's day and age, most of that access is done

24  through cell phones.

25      And condition number 10, which allows or requires the

1  defendant to submit to search by the probation officer of his
2  person, property, house, residence, including his computer and
3  cell phone, should be sufficient.  And I think the difference
4  is just, one, having the actual software, the program, on the
5  computer, which is expensive and costly to a defendant, and
6  item number 10, which is just a more traditional subject to
7  search condition.
8      So I believe item number 10 is sufficient for purposes of
9  monitoring the defendant.  So I don't think we need item
10  number 6.
11      THE COURT:  All right.  I actually adapted number 9
12  to subsume some of the things that are included in number 10.
13  They are somewhat duplicative.  So it will be number -- mostly
14  the language in number 9.
15      MR. MITCHELL:  Okay.  No objection from the
16  government.
17      And then in terms of GPS monitoring, typically, I
18  understand some defendants may have some concerns if they're
19  going to work and there is a big ankle monitor around their
20  ankle that may make it difficult to answer some questions while
21  at work.
22      I don't believe the defendant has that type of employment
23  here.  But I agree with Counsel's characterizations about
24  Mr. Funke on his compliance with the pretrial supervision and
25  just his general acceptance of responsibility and respect for

1    the law.

2        I think that Counsel is correct, when he argues, that

3    Mr. Funke was one of the very first to come in.  He fully

4    accepted responsibility.  Not only was he willing to accept

5    responsibility and plead guilty almost immediately after we

6    confronted him, but he did agree to come in, sit down, and

7    answer all of our questions.  And if the government asked,

8    there is no doubt in my mind that he would have signed a

9    cooperation plea agreement and testified if the government

10   needed him to do so.  Unfortunately, we did not need him to do

11   so here.

12       So I will defer to the wisdom of the Court on the GPS

13   monitoring, but I don't believe it's necessary here.

14            THE COURT:  I will delete that language, but it's

15   really up to the Probation Office to decide how to implement

16   the home detention program.  It's my understanding that they

17   have some alternative ways to do it now that don't involve the

18   ankle monitor, including face recognition on the phone.  So

19   it's probably likely in a case like this that they will use

20   that.

21            MR. MITCHELL:  Your Honor, I also have some just, you

22   know, arguments to kind of make, in general, if the Court

23   wishes to hear.

24            THE COURT:  Mr. Hochman, are you finished?

25            MR. HOCHMAN:  Yes.  Unless the Court has any

1   questions, I am finished, Your Honor.

2           THE COURT:  All right.  Then, Mr. Mitchell.

3           MR. MITCHELL:  Just very briefly, Your Honor.

4   Counsel characterized Mr. Funke at the very low end of the

5   culpability for the organization.

6           MR. HOCHMAN:  Lower end.

7           MR. MITCHELL:  Lower end may be a better

8   characterization.  I would characterize Mr. Funke towards the

9   middle.  At the very bottom, we had people like Mr. Miller, who

10  were just assisting some of the bookies or the agents of the

11  operation.  Above that person would be a sub-agent, who is kind

12  of graduating from being a gambler, a player, to taking a

13  commission for bringing in their friends to the larger

14  organization.

15      And then those individuals, those sub-agents, sometimes

16  will graduate to become agents of their own, where they cover

17  all the wins or losses of their own clients.  Mr. Funke had

18  elevated to that level.  However, he was on the lower tier of

19  that level of individuals running their own book.

20      Normally, we wouldn't -- I wouldn't recommend probation

21  for somebody of that culpability.  However, here, I think

22  Counsel's arguments are well taken.  Mr. Funke did come in very

23  quickly.  He did agree to cooperate.  And also, the Title 1

24  violation with the permanent injunction, I believe, will

25  mitigate any chances of recidivism in a case like this.

1        So for all of those reasons, the government believes that

2   the probation with the six months' confinement is appropriate

3   here.

4        And, finally, I just want to point out that the permanent

5   injunction is a little unique, as Counsel indicated.  This is

6   not a condition of supervised release.  This is just a

7   permanent injunction upon him.

8            THE COURT:  Is that sufficient to have it in the

9   judgment and commitment order, or does it need to be a separate

10  order?

11           MR. MITCHELL:  I believe in the judgment and

12  commitment order as one of the parts of the sentence would be

13  sufficient.

14           THE COURT:  All right.

15       Mr. Funke, would you like to make a statement before I

16  impose sentence?

17           THE DEFENDANT:  Yes, I would, Your Honor.

18       Dear Your Honor,  I am truly and incredibly sorry for the

19  crime I committed.  This has been more than a life lesson for

20  me.  To this point in my life, I've never had any sort of

21  run-in with any law enforcement whatsoever, and I do not plan

22  to after this.

23       This has also been on the forefront of my mind and every

24  facet of my life for the past three years, and I am in total

25  understanding of my wrongdoing, and I just look forward to

1  being a more positive example in society again.

2      I am thankful for your time and your leniency for this

3  sentencing, and you will never see me in this situation again.

4  Thank you.

5          THE COURT:  All right.  Thank you.

6      All right.  In this case, the parties appear to be in

7  agreement as to the probation officer's calculation of the

8  guidelines range.  Counts 1 and 2 are grouped together pursuant

9  to guideline section 3D1.2(d).  Specifically, there is a base

10  offense level of 12 under guideline section 2E3.1(a)(2).  And

11  there is a two-level reduction under section 3E1.1(a) for

12  Mr. Funke's acceptance of responsibility.  This results in a

13  total offense level of 10.

14      According to the presentence report, there are zero

15  criminal history points.  So the criminal history category

16  is I.  I find the presentence report to be accurate and

17  correct.  I, therefore, adopt the report and its calculation of

18  the advisory sentencing guidelines.

19      As you know, determining the appropriate sentence, the

20  guidelines are the starting point and the initial benchmark in

21  the Court's analysis.  Given the two counts in the indictment

22  to which Mr. Funke pled guilty, I'm consulting and taking into

23  account the November 2021 edition of the guidelines.

24      The total offense level, as I said, is 10.  The criminal

25  history category is I.  The guideline range for custody is six

to 12 months.  The guideline range for supervised release is one to three years.  The guideline range for the fine is $4,000 to $40,000.

In determining the sentence, I am mindful of and take very seriously my obligation to act in accordance with the sentencing guidelines admonition that the Court shall impose a sentence that is sufficient, but not greater than necessary to comport with the purposes of the guidelines.

In making an individualized determination based on the facts, I am also considering the factors described in Section 3553(a), especially but not exclusively, one, the nature and circumstances of the offense and the history and characteristics of this defendant; two, the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment, to afford adequate deterrence for criminal conduct, and to protect the public from further crimes of the defendant.

I also considered the kinds of sentences available, the sentencing range, as set forth in the guidelines, and the need to avoid unwarranted sentence disparities among defendants with similar records who have been convicted of similar offenses

In weighing all of these factors under Section 3553(a), I've taken into account the facts set forth in the parties' plea agreement, the presentence report, and their joint position statement as well as their statements here today in

1    court, including the following:

2         Matthew Funke is a 43-year-old man, who pled guilty to

3    Counts 1 and 2 of a two-count information for operating an

4    illegal gambling business and accepting a financial instrument

5    for unlawful Internet gambling.

6         Mr. Funke grew up with an intact family in North Dakota,

7    where he was well cared for and provided with the necessities

8    of life.  After completing high school and a couple of years of

9    college in Minnesota, Mr. Funke moved to California to pursue

10   an acting career.

11        He was able to make a living through his acting work, but

12   in 2011, he took two months off to care for his terminally ill

13   brother in St. Louis, Missouri and was dropped by his talent

14   manager.  After that, he decided to quit acting and worked on

15   various other creative products, including script writing,

16   movie production, music festivals, hiring artists, and

17   designing merchandise.  It would have been good if he had

18   continued to do that instead of the conduct that resulted in

19   this offense.

20        A couple of years ago, Mr. Funke decided to liquidate all

21   of his assets, including his home in Los Angeles, and to buy a

22   couple of properties in Palm Springs, one of which he is

23   converting into a small high-end boutique hotel.  He currently

24   has no employment income but is living off of the proceeds of

25   his asset liquidation.

1        Based on a review of his financial assets, Mr. Funke

2   appears to be able to pay a fine.  The defendant engaged in a

3   crime in that he pled guilty to conspiracy -- I'm sorry, to

4   operate an illegal gambling business and to accept a financial

5   instrument for unlawful Internet gambling.

6        Mr. Funke has no prior criminal record and a mitigating

7   factor that has been discussed by the parties and is

8   appropriate for the Court to consider under Section 3553(a), is

9   that Mr. Funke accepted responsibility for his actions early

10  on, waived indictment, and was truthful with the government

11  regarding his and others' illegal activities.

12       In balancing the Section 3553(a) factors, the Court finds

13  that a custodial sentence in this case is not necessary,

14  because Mr. Funke will receive sufficient punishment through

15  his felony conviction, the fine that he must pay, the

16  forfeiture of a substantial amount of cash, and the conditions

17  of supervised release with which he must comply.

18       I will now state the sentence, but Counsel will have a

19  final chance to make any legal objections before sentence is

20  imposed.

21       Does either Counsel know of any reason why sentence should

22  not now be imposed?

23            MR. MITCHELL:  No, Your Honor.

24            MR. HOCHMAN:  No, Your Honor.

25            THE COURT:  In light of the totality of the

circumstances and the parsimony principle, I find that the following sentence is reasonable and sufficient but is no greater than necessary to comply with the purposes stated in 18 U.S.C. Section 3553(a).

It is ordered that the defendant shall pay to the United States a special assessment of $200, which is due immediately. It is ordered that the defendant shall pay to the United States a total fine of $4,000, which shall bear interest as provided by law.  The fine shall be paid in full within ten days from the entry of judgment.

The Court has found that the property identified in the preliminary order of forfeiture is subject to forfeiture.  The preliminary order is incorporated by reference into this judgment and is final.

The Court permanently enjoins defendant from placing, receiving, or otherwise making bets or wagers or sending, receiving, or inviting information assisting in the placing of bets or wagers pursuant to Title 31 United States Code Section 5366.

The defendant shall comply with Second Amended General Order Number 20-04.

Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the defendant, Matthew Funke, is hereby placed on probation on each of Counts 1 and 2 of the two-count information for a term of two years to be served

concurrently under the following terms and conditions:

One, the defendant shall comply with the rules and regulations of the United States Probation and Pretrial Services Office and Second Amended General Order 20-04;

Two, the defendant shall not commit any violation of federal, state, or local law or ordinance;

Three, during the period of community supervision, the defendant shall pay the special assessment and fine in accordance with this judgment's orders pertaining to such payment;

Four, the defendant shall participate for a period of six months in a home detention program which may include alcohol monitoring unit or automated identification system and shall observe all rules of such program as directed by the probation officer;

Five, the defendant shall pay the costs of home confinement monitoring to the contract vendor not to exceed the sum of $12 for each day of participation.  The defendant shall provide payment and proof of payment as directed by the probation officer;

Six, the defendant shall apply all monies received from income tax refunds, lottery winnings, inheritance, judgments, and any anticipated or unexpected financial gains to the outstanding court-ordered financial obligation;

Seven, the defendant shall not enter, frequent, or be

1    involved with any illegal gambling establishment or activity

2    during the period of supervision;

3         Eight, the defendant shall, upon request of the probation

4    officer, authorize release of any and all financial records to

5    include income records, income tax records, and Social Security

6    records by execution of a release of financial information form

7    or by any other appropriate means;

8         Nine, the defendant must submit to a search of his person,

9    property, house, residence, vehicle, papers, electronic

10   devices, or other areas under the defendant's control to be

11   conducted in a reasonable manner and at a reasonable time for

12   the purpose of detecting evidence of illegal gambling

13   activities at the direction of the probation officer upon

14   reasonable suspicion.

15        The defendant shall warn any other occupants that the

16   premises may be subject to searches pursuant to this condition;

17        And, ten, the defendant shall cooperate in the collection

18   of a DNA sample from the defendant.

19        The drug testing condition mandated by statute is

20   suspended based on the Court's determination that the defendant

21   poses a low risk of future substance abuse.

22        Is there a bond that needs to be exonerated?

23             MR. HOCHMAN:  Yes, Your Honor.  I think it was an

24   unsecured appearance bond.

25             THE COURT:  All right.  That bond is exonerated.

```
1          The statement of reasons will be included in the
2     commitment order and judgment and will be provided to the
3     Probation Office and to the United States Sentencing
4     Commission.  A complete copy of the presentence report will
5     also be provided to the United States Sentencing Commission.
6          Mr. Funke, I must inform you that, generally a defendant
7     has a right to appeal his conviction if he believes that his
8     guilty plea was somehow unlawful or involuntary or if there was
9     some other fundamental defect in the proceedings or if he
10    thinks his sentence is contrary to the law.
11         In your case, however, you entered into a plea agreement
12    in which you agreed to give up your right to appeal all or part
13    of the sentence.  Such waivers are generally enforceable, but
14    if you have some theory that you wish to raise with the Ninth
15    Circuit Court of Appeals, with few exceptions, a Notice of
16    Appeal must be filed within 14 days of judgment being entered.
17         Do you understand?
18              THE DEFENDANT:  I do, Your Honor.
19              THE COURT:  All right.  Is there anything further?
20              MR. MITCHELL:  No, Your Honor.
21              MR. HOCHMAN:  No, Your Honor.
22              THE COURT:  All right.  Good luck to you, Mr. Funke.
23              THE DEFENDANT:  Thank you, Your Honor.
24              MR. HOCHMAN:  Thank you very much, Your Honor.
25              MR. MITCHELL:  Thank you, Your Honor.
```

1          THE COURT:  We are adjourned.

2      (Adjourned at 4:24 p.m.)

3                          -oOo-

4

5

6                 REPORTER'S CERTIFICATE

7

8

9      I certify that the foregoing is a correct transcript of

10   proceedings in the above-entitled matter.

11

12   /s/ Suzanne M. McKennon, CSR, CRR, RMR
                                            Date:  10/13/2023
13   United States Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25